THE LAW OFFICES OF
# NEAL BRICKMAN, P.C.
420 LEXINGTON AVENUE, SUITE 2811
NEW YORK, NEW YORK 10170

| | |
|---|---|
| NEAL BRICKMAN | TELEPHONE: |
| JUDITH L. GOLDSBOROUGH | (212) 986-6840 |
| ETHAN Y. LEONARD | |
| VIRGINIA A. REILLY | TELECOPIER: |
| JASON A. STEWART | (212) 986-7691 |

November 11, 2023

Via ECF and Electronic Mail

Honorable Analisa Torres, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007
Torres_NYSDChambers@nysd.uscourts.gov

Re:  *Better Holdco, Inc., v. Pierce*
Case No: 22 CV 09580 (AT)

Dear Judge Torres:

We represent the Defendant, Sarah J. Pierce ("Pierce" or "Defendant") in the above-referenced matter. Pierce respectfully submits this letter in opposition to the proposed Judgment submitted by Plaintiff, Better Holdco, Inc. ("Better"). The proposed Judgment conflates the notion of how a note can be "collected" with the notion that a note is "non-recourse." The entry of a personal judgment is antithetical to the fact that the Notes at issue are, at least partially, non-recourse notes. Moreover, and in any event, Plaintiff has impaired the collateral securing the relevant Notes and should be precluded from entering any judgment on them.

1. <u>The Nonrecourse Portion Of The Notes Is Not Subject To A Personal Judgment Against Pierce As A Matter Of Law</u>

Both of the Partial Recourse Promissory Notes provide – at Paragraph 9 – that "[t]he holder of this Note [Better] will have no personal recourse against [Pierce] as to any additional

1

indebtedness owing under this Note that exceeds the Recourse Portion [defined as "up to 51% of the entire amount of the Note and any unpaid interest due …"] (the "Non-Recourse Portion"), including any principal amount in excess of the Recourse Portion under this Note. The holders of this Note's recourse with respect to the Non-Recourse Portion shall be limited only to the Pledged Collateral … and the Company shall no further recourse against [Pierce] … with respect to the Non-Recourse Portion." Pierce Aff. at ¶¶ 7 and 8.

It is undisputed that Section 9 "Partial recourse" of the relevant Notes defines the "Recourse Portion" of the Notes as "(a) up to 51% of the entire amount of this Note and (b) any unpaid interest due or compounded under this Note." It is equally undisputed that the same section describes the Non-Recourse portion of the respective Notes as:

> The holder of this will have no personal recourse against Borrower as to an additional indebtedness owing under this Note that exceeds the Recourse portion (the "Non-Recourse Portion"), including any principal amount in excess of the Recourse Portion under this Note. The holder of this Note's recourse with respect to the Non-Recourse portion shall be limited only to the Pledged Collateral (as defined in the Pledge Agreement) pursuant to the terms of this Note and the Security Agreement, and the Company shall have no further recourse against Borrower or any real, tangible or intangible assets of Borrower, with respect to the Non-Recourse Portion.
>
> To the extent that the Lender proceeds against the Pledged Securities, then (x) the vested portion of such Pledged Securities shall be valued at the "Fair Market Value" as defined in the Plan; and (y) the unvested portion of the Pledged Securities shall be subject to, and valued in accordance with, the Repurchase Option (as set forth in the Option Agreement).
>
> For the avoidance of doubt, any repayment under this Note shall first offset the portion of the Note that is Non-Recourse Portion, such that the Recourse Portion is always the last amount
> remaining to be paid.

It is black letter law that "[t]he term 'nonrecourse' describes a type of debt that is 'of, or relating to, or involving an obligation that can be satisfied only out of collateral securing the

2

obligation and not out of the debtor's other assets.' Black's Law Dictionary (10th ed. 2014). A nonrecourse note is '[a] note that may be satisfied upon default only by means of the collateral securing the note, not by the debtor's other assets.' Id." *In re Taberna Preferred Funding IV, Ltd.,* 594 B.R. 576, 586 (US Bankruptcy Ct., SDNY 2018). When Non-Recourse provisions are clear, they are controlling and may not be disturbed. See *e.g., Hauser v. Western Group Nurseries, Inc.,* 767 F.Supp.475 (S.D.N.Y. 1991). Thus, it is clear that the plain language of the Notes expressly provides that Better has NO recourse against Pierce – including the entry of a personal judgment against her -- for $1,115,730 (49%) of the $2,277,000 it is seeking to recover from Pierce. The only recourse Better has for this amount is limited to the Pledged Collateral (*i.e.* the stock Pierce acquired with the loan) which Better, not Pierce, holds. (This is clear given the plain language of the Security Agreement submitted by Better and Better's clear, unequivocal, and unwaivable obligations under the UCC, obligations which it specifically acknowledged and referenced in its Security Agreement, which was incorporated in the Notes).

    Contrary to the Court's determination and Better's proposed judgment, the law is clear that nonrecourse portions of a loan are not subject to personal judgments. See *e.g., Onewest Bank, N.A., v. Muller*, 138 N.Y.S.3d 165, 2020 NY Slip Op. 07205 (2nd Dept 2020) (Appellate Court modified judgment to exclude any amounts in excess of sale of subject property on nonrecourse loan); see also, *Hauser*, 767 F.Supp. at 484-5 (Court granted summary judgment to debtor as to claims made in excess of agreed upon collateral for nonrecourse loan); *In re 680 Fifth Ave. Assocs.,* (*680 Fifth Ave. Assocs. v. Mut. Benefit Life Ins. Co. in Rehabilitation*), 156 B.R. 726, 732 (Bankr.S.D.N.Y.1993), *aff'd*, 169 B.R. 22 (S.D.N.Y.1993), 29 F.3d 95 (2nd Cir.1994) ("A nonrecourse creditor is a creditor who has agreed to look only to its collateral for satisfaction of its debt and does not have any right to seek payment of any deficiency from a debtor's other

assets"); *Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc.*, 35 Misc.3d 1205(A) (2012) (Court found loan to be non-recourse such that usury laws did not apply because no monetary judgment could be obtained against debtor except as against collateral agreed to, but recognizing that recourse loan would be subject to NY usury laws); *Case Cash Funding, LLC v. Gilberg*, 55 Misc.3d 144(A) (2nd Dept App. Term, 2017) (Same and noting civil usury when interest in excess of 16% per annum (General Obligations Law § 5–501; Banking Law § 14–a) and criminal usury when interest in excess of 25% per annum (NY Penal Law §190.40), as well as, that such usurious contracts are void (GOB § 5-511)); *Health-Chem Corp., v. Blank*, 176 A.D.2d 469 (1st Dept 1991) (Court upheld denial of summary judgment where questions of fact as to recourse nature of loan); In the instant case, Better has no claim except against the securities for $1,115,730 (or 49%) of the $2,277,000 (the face amount of the combined Notes), and no judgment can be entered against Pierce for anything in excess of $1,151,270 as a matter of black letter law.[1]

    Moreover, it is clear from an accounting perspective, that a non-recourse note received in consideration for issuance of stock is essentially a stock option, but with respect to which the option is deferred until the loan is paid when the option is exercised for the first time. If, at the time of potential exercise, the option is underwater, it will never be exercised. As such, not only is there no personal liability on which to assess a personal judgment, there is not even any action that resulted in an obligation as the option was never actually exercised. Notably, even recourse notes are considered non-recourse and the stock option not considered exercised if any of the following four conditions exist: (1) Although the employer has legal recourse to the employee's

---

[1] Respectfully, these cases are on point in that the deal with nonrecourse loans for which no personal judgment can ever attach. In contrast, the case cited by the Court in its summary judgment decision did deal with collateral for a loan, but did not deal with a non-recourse loan or even a partially non-recourse loan. See., *HCG Mezzanine Dev. Fund L.P. v. Jreck Holdings, LLC,* 964 N.Y.S.2d 59 (S.Ct. NYCty 2012).

other assets, it does not intend to seek repayment beyond the shares issued; (2) The employer has a history of not demanding repayment of loan amounts in excess of the fair value of the shares; (3) The employee does not have sufficient assets of other means (beyond the shares) to justify the recourse nature of the loan; or (4) The employer has accepted a recourse note upon exercise and subsequently converted the recourse not to a nonrecourse note in the past. (Pricewaterhouse Coopers Viewpoint 2.3 Recourse notes to purchase stock, *et seq.*).

In addition, even as quoted by Better in its proposed judgment, the relevant agreements are clear that only "unpaid principal and interest *subject to collection* will bear interest…" As is clear, $1,115,730 of the $2,277,000 face amount of the notes is not "subject to collection." As such, at most only interest on $1,151,270 may be collected.

On these bases alone, if any amounts are due to Better, which we submit there are none, and assuming the accuracy of Better's additional assertions and the Court's other determinations on the Summary Judgment – no arguments about which are waived by Pierce -- paragraph 1 of Better's proposed judgment should be modified to $1,151,270; and paragraph 2 should be amended to reflect interest amounts of at most $8,297.43 for the period from January 25, 2021 through June 5, 2022 (506 days) and $248,611.24 for the period from June 6, 2022 through October 10, 2023 (490 days at 16% interest, the maximum before civil usury is applied).[2]

2. <u>The Recourse Portion Of The Notes Must Be Further Reduced As A Matter Of Contract Based On The Clear Language Of The Notes Themselves</u>

As set forth above, the Notes themselves are clear that if Better proceeds to enforce the Notes, as it assuredly has, the non-vested shares are to be repurchased at the strike price, with the proceeds first applied to the non-recourse portion and then to the recourse portion of the Notes.

---

[2] At 25%, this amount would be $388,455.07.

5

The language of the Notes, as the Court correctly noted, must be adhered to (which also precludes any personal judgment against Pierce as to the non-recourse portion of the same).  In this case, of the 450,000 shares relevant to the Notes, 181,250 were vested and 268,750 were unvested.  As the undisputed strike price for these shares was $5.06, the value for repurchase of the unvested shares would be $1,359,875.  As the non-recourse portion of the Notes was $1,115,730, that amount must be satisfied first, but would leave a balance of $244,145.  Then in order to find the maximum potential judgment under the applicable law and the plain wording of the Notes themselves (and without considering the other arguments against enforcement raised by Pierce in opposition to summary judgment and below – arguments that are not waived herein), one must subtract $244,145 from $1,151,270 resulting in $907,125, as the maximum amount of any potential judgment.

As such, paragraph 1 of Better's proposed judgment should be modified to $907,125; and paragraph 2 should be amended to reflect interest amounts of at most $6,539.25 for the period from January 25, 2021 through June 5, 2022 (506 days) and $194,850.45 for the period from June 6, 2022 through October 10, 2023 (490 days at 16% interest, the maximum before civil usury is applied).[3]

3. <u>Under The Strictures Of The UCC And Fair Dealing No Judgment Should Be Entered Against Pierce Personally</u>

In addition, the Court should also take this opportunity to address Better's abject failure to meet its obligations under Article 9 of the Uniform Commercial Code. See *e.g., Federal Deposit Ins. Corp. v. Forte*, 94 A.D.2d 59, 67 (2nd Dept 1983) ("A secured party's duty to act with due diligence, reasonableness and care may not be disclaimed by agreement (Uniform Commercial Code, § 1–102, subd.[3])") and principles of fair dealing.  As referenced above, Better specifically

---

[3] At 25%, this amount would be $304,453.83.

acknowledged these obligations in its Security Agreement. Specifically Section 9 of that Agreement reads as follows:

9.  Events of Default; Remedies
a.  Event of Default. An "Event of Default" shall be deemed to have occurred under this Security Agreement upon the occurrence and during the continuance of an Event of Default under the Note.
b.  Rights Under the UCC. In addition to all other rights granted hereby, and otherwise by law, the Secured Party shall have, with respect to the Pledged Collateral, the rights and obligations of a secured party under the UCC.
c.  Sale of Pledged Collateral. The Debtor acknowledges and recognizes that the Secured Party may be unable to effect a public sale of all or a part of the Pledged Securities and may be compelled to resort to one or more private sales to a restricted group of purchasers who will be obligated to agree, among other things, to acquire the Pledged Securities for their own account, for investment and not with a view to the distribution or resale thereof. The Debtor acknowledges that any such private sales may be at prices and on terms less favorable to the Secured Party than those of public sales, and agrees that so long as such sales are made in good faith such private sales shall be deemed to have been made in a commercially reasonable manner and that the Secured Party has no obligation to delay sale of any Pledged Securities to permit the issuer thereof to register it for public sale under the Securities Act of 1933, as amended or under any state securities law.
d.  Compliance with the Exchange Act. Upon the occurrence of an Event of Default, and at the Secured Party's request, the Debtor agrees to use the Debtor's best efforts to cause the Secured Party to disseminate publicly all information required to be disseminated pursuant to the Securities Exchange Act of 1934, as amended, in the event that the Secured Party or the Debtor is required to file reports under such Act, or to otherwise make available such information as to permit the public or private sale of the Pledged Collateral in accordance with the terms of this Security Agreement. The Debtor further agrees to use the Debtor's best efforts to cause the Secured Party to cooperate with the Secured Party in taking whatever additional action may be required to effect such public or private sale of the Pledged Collateral.
e.  Notice, Etc. In any case where notice of sale is required, ten (10) days' notice shall be deemed reasonable notice. The Secured Party may have resort to the Pledged Collateral or any portion thereof with no requirement on the Secured Party to proceed first against any other Person or property.
f.  Other Remedies. Upon the occurrence and during the continuance of an Event of Default, (i) at the request of the Secured Party, the Debtor shall assemble and make available to the Secured Party all records relating to the Pledged Securities at any place or places specified by the Secured Party, together with such other information as the Secured Party shall request concerning the Debtor's ownership of the Pledged Securities and relationship to the Secured Party; and (ii) the Secured Party or its nominee shall have the right, but shall not be obligated to give consent with respect to the Pledged Securities or any part thereof.

Better has represented to the Court that it declared Pierce in default on June 5, 2022. Better had a responsibility to act in a commercially reasonable and responsible manner (§9-607(c)).

Better had the right under UCC article 9 Part 6 to, *inter alia*, collect on collateral (§9-607); repossess the collateral (§9-609); sell or dispose of the collateral (§9-610); or accept the collateral (§9-620). In the instant case, Better chose not to avail itself of any of these remedies. Such inaction was not commercially reasonable, especially as the shares could have been sold at $20.75 per share (when the 450,000 shares in question would have been valued at $9,337,500) shortly after the IPO – or at any point thereafter, prior to their falling to a current price of approximately $.44. In failing to act in a commercially reasonable manner, Better has waived its right to recover any of the amounts it now claims herein.

Aside from failing to act in a commercially reasonable manner to protect its own interests, Better also refused specific opportunities forwarded by Pierce to resolve this matter. Initially, prior to the IPO, Better refused to mitigate and accept the shares back from Pierce unless she withdrew her claims of discrimination. Had Better accepted the same arrangement that it accepted with every other shareholder, including "Major Stockholders," and which it had a clear right to do under the Stockholder Support Agreement Section 3.2, it could have accepted the tender of the shares in question which, even at the strike price of $5.06 would have resulted in a gain to it of approximately $7,060,500.00, if it had then sold them shortly after the IPPO. That is not only a commercially unreasonable position but an actionably retaliatory one.

Thereafter, and subsequent to the IPO, not only did Better refuse to act on its own behalf, including directly after the IPO, when the public share price was $20.75 or at any time thereafter as the stock price fell to $.44, but it also refused to allow Pierce to sell any of her shares (not only the 450,000 specifically at issue herein) even after a request was made through her counsel when the share price had dropped to $2.50, but still multiples above its recent listing at $.44. That specific request was denied on or about August 24, 2023 after Pierce had e previously been denied

8

the opportunity to sell any of her shares through her broker. In denying Pierce the right to sell any of her shares into the public market, Better has asserted that Pierce was restricted as either a "Major Stockholder" or a "Management Team" member. Both assertions are patently disingenuous as Pierce has not been employed by Better since February 4, 2022. The position that Pierce remains a Management Team member some nineteen (19) months after her retaliatory termination would be farcical, but for the seriousness of this situation. Similarly, the contention that Pierce currently remains a "Major Stockholder" also makes little or no sense, *inter alia*, based on the passage of time since her improper termination and as other individuals with greater numbers of shares were allowed to sell their shares even while she was being precluded. Notably, Pierce was precluded from selling not only any of the 450,000 shares relevant to the two Notes herein, but also other shares separately granted to her.

In improperly and unjustifiably impairing the collateral for the Notes, Better has "discharge[d] any party to the instrument." See UCC 3-606(1)(b); *ESL Fed. Credit Union v. Bovee*, 9 Misc.3d 256, 260 fn1, 801 N,Y,S.2d 482, 485 (S.Ct., Monroe Cty 2005). In essence, this is a situation solely of Better's own making and contrivance. This matter could have been – and should have been – resolved on a myriad of occasions through a myriad of means at Better's disposal and in compliance with its obligations under the UCC over the last 19 months. Better should not be able to improperly reap the benefits of its own bad actions – especially after precluding, in retaliatory fashion, Pierce from mitigating this situation and unlawfully and improperly impairing her collateral.

WHEREFORE, it is respectfully requested that any Judgment in favor of Better as against Pierce be denied in its entirety, or, in the alternative that the proposed Judgement be modified as follows: paragraph 1 of Better's proposed judgment should be modified to $907,125; and

paragraph 2 should be amended to reflect interest amounts of at most $6,539.25 for the period from January 25, 2021 through June 5, 2022 (506 days) and $194,850.45 for the period from June 6, 2022 through October 10, 2023 (490 days at 16% interest, the maximum before civil usury is applied).

We thank the Court for its time and consideration in this regard.

Respectfully submitted,

*Neal Brickman*

Neal Brickman

Cc:   All Counsel via ECF

10