UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
BETTER HOLDCO, INC.,

        Plaintiff,

           v.

SARAH PIERCE,

        Defendant.

--------------------------------------------------------X

Case No. 22-cv-09580 (AT) (OTW)

**<u>DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS</u>**

The Law Offices of Neal Brickman, P.C.
Neal Brickman, Esq. (NB0874)
Ethan Leonard, Esq. (EL2497)
420 Lexington Avenue - Suite 2811
New York, New York 10170
(212) 986-6840

*Counsel for Defendant Sarah Pierce*

Table Of Contents

Preliminary Statement      …………………………………………      1

Limited General Background      …………………………………      2

Argument      …………………………………………………      7

    General Standards Concerning Requests
    For Attorneys' Fees      ……………………………………      7

    Application To The Instant Rates And
    Hours Requested      ………………………………………      11

Conclusion      …………………………………………………      14

Table Of Authorities

*615 Bldg. Co., LLC v. Rudnick,*
    13 Civ. 215 (GBD)(RLE), 2015 WL 4605655
    (SDNY, July 31, 2015)   ……………………………       9,11

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany,*
    522 F.3d 182, 190 (2nd Cir. 2007)   ………………………       7

*Carlton Group, Ltd. v. Par-La-Ville Hotels & Residences Ltd.,*
    14 Civ. 10139 (ALC), 2016 WL 3659922
    (SDNY, June 30, 2016)   ……………………………       9,11

*Cutter Bayview Cleaners, Inc., v. Spotless Shirts, Inc.,*
    57 A.D.3d 708 (2nd Dept 2008)   ………………………       10

*DiFilippo v. Morizio,*
    759 F.2d 231 (2nd Cir. 1985)   …………………………       7

*Dye v. Kopiec,*
    16 Civ. 2952 (LGS), 2019 WL 2527218
    (SDNY, June 19, 2019)   …………………………       9

*Euro Pacific Capital, Inc. v. Bohai Pharm Grp. Inc.,*
    15 Civ. 4410 (VM), 2018 WL 1229842
    (SDNY, March 9, 2018)   ……………………………       9,11

*Global Brand Holdings, LLC v. Accessories Direct International USA, Inc.,*
    17 Civ. 7137 (LAK) 2020 WL 9762874
    (SDNY, May 29, 2020)   …………………………       7,8

*LCS Grp. LLC v. Shire LLC,*
    383 F. Supp.3d 274 (S.D.N.Y. 2019) ………………………       10

*Luciano v. Olsten Corp.,*
    109 F.3d 111 (2nd Cir. 1997)   …………………………       10

*Millea v. Metro-N. R.R. Co.,*
    658 F.3d 154 (2nd Cir. 2011)   …………………………       7

*Morris v. Eversley,*
    343 F.Supp.2d 234 (SDNY 2004)   ………………………       7

*Nautilus Neurosciences, Inc. v. Fares*,
    13 Civ. 1078 (SAS), 2014 WL 1492481
    (SDNY, April 16, 2014)   …………………………………   8

*Rubenstein v. Advanced Equities*,
    13 Civ. 1078 (PGG), 2015 WL 585561
    (SDNY, February 10, 2015)   …………………………………   8

*Tabatznik v. Turner*,
    14 Civ. 8135 (JFK), 2016 WL 1267792
    (SDNY, March 30, 2016)   …………………………………   7,8

*Townsend v. Merrill Lynch Pierce Fenner & Smith*,
    18 Civ. 5939 (AJN) 2020 WL 2079633
    (SDNY, April 30, 2020)   …………………………………   9,11

Defendant Sarah Pierce ("Pierce"), by and through her undersigned counsel, respectfully submits this Memorandum of Law in opposition to Better Holdco, Inc's ("Better") Application for Attorneys' Fees and Costs in the amount of $219,112.71 in connection with Better's motion for summary judgment in lieu of complaint in connection with two partially non-recourse Notes.

<u>Preliminary Statement</u>

Better's Application seeks $219,112.71 in attorneys' fees and costs in connection with, essentially, three pieces of work: (1) a straight-forward Motion for Summary Judgment in Lieu of complaint in the Supreme Court of the State of New York which consisted of a five-page memorandum of law (6 pages including the signature block) and an Affidavit from Brain Ro consisting of 12 paragraphs over 3 pages and four pre-printed exhibits; (2) a revised version of the State Court papers: namely a 7 page memorandum of law (the preliminary statement and the facts are virtually identical and the relevant legal section was bumped from one page to 1½ pages); a 19 paragraph, 4 page Rule 56.1 Statement; and an Affidavit of Mr. Ro to which a single paragraph was added along with the same essential exhibits)[1]; and (3) a reply memorandum of law in answer to Claimant's memorandum in opposition.  (The two memoranda are attached for reference as Exhibit A to the Leonard Declaration and the Affidavits as Exhibit "B").

To create these filings Better would have this Court believe that a reasonable fee would be $219,112.71 and required 219 hours of attorneys' time (with an average billing rate of approximately $974.23 per hour) and including 107 hours of partner time; as well as 19 hours of paralegal time with an average billing in excess of $300.00 per hour. Such billings simply do not constitute reasonable attorneys' fees either by rate or quantity of hours for the relevant work.  Aside

---

[1] Better itself has asserted that "[t]he transaction here was straightforward …" and that "[t]he loan took the form of two promissory notes both containing an unconditional promise by Pierce to pay Better any unpaid principal and accrued interest … immediately upon the Notes' due dates." Better Federal Memorandum of Law in Support of its Motion for Summary Judgment in Lieu of Complaint ("MOL") at p.6.

from the obvious, by way of further example (which will be further addressed below) an associate

with a billing rate of $807.50 per hour spent 8.6 hours over two days researching issues related to

the service of a motion for summary judgment in lieu of complaint and researching and drafting a

"client memo regarding service of process for motion for summary judgment in lieu of complaint."

The same associate was tasked for 3.8 hours over two days with researching and drafting a memo

regarding removal of Better's motion for summary judgment in lieu of complaint – in connection

with Parties that were previously acknowledged to have clear diversity of citizenship and in which

Better was certainly aware that the amount in controversy exceeded $75,000.00.  As a matter of

law the Application is clearly excessive.

## Limited General Background[2]

Pierce was employed by Better from August 2016 until February 4, 2022, when she was

terminated. Pierce Aff. at ¶ 2. She was the "number 2" executive at the Company, functioning as

its Chief Operating Officer. *Id*. To reward her outstanding performance, in or about December

2020, Better granted Pierce stock options to purchase 450,000 shares of Better common stock at a

strike price of $5.06 per share. Pierce Aff, at ¶ 3.

On January 25, 2021, Better and Pierce amended the original stock option agreement, in

two sets of contract agreements, so she could exercise the stock options through a loan from the

Company evidenced by two Partial Recourse Promissory Notes. Pierce Aff., at ¶ 4. One Partial

Recourse Promissory Note allowed Pierce to purchase 300,000 shares and was in the amount of

$1,518,000. Pierce Aff. at ¶ 5. The other Partial Recourse Note allowed Pierce to buy an additional

---

[2] By way of background and context, Pierce submits to the Court a copy of her Affidavit which references her Counterstatement of Undisputed Facts that was submitted in connection with the underlying Summary Judgment motion.  (See DKT 16-17 and Exhibit "C" to the Leonard Declaration.  Paragraph references herein refer to the similarly numbered paragraphs in that Counterstatement.) The facts recited herein are not currently disputed.

150,000 shares and was in the amount of $759,00. *Id*. The underlying shares acquired with these loans vested over time, such that, at the time of her termination, only approximately one-half of the shares were vested. Other than the amounts loaned, the terms of the two Partial Recourse Promissory Notes were identical.

Both of the Notes define "Due Date" as, *inter alia*," [o]ne hundred and twenty (120) days after the date of [Pierce's] termination of employment relationship with [Better] for any reason[.] Pierce Aff. at ¶ 6. Therefore, the due date for Pierce's two notes was June 4, 2022. Pierce Aff. at ¶ 9.

Both of the Partial Recourse Promissory Notes provide – at Paragraph 9 – that [t]he holder of this Note [Better] will have **no personal recourse** against [Pierce] as to any additional indebtedness owing under this Note that exceeds the Recourse Portion [defined as "up to 51% of the entire amount of the Note and any unpaid interest due …"] (the "Non-Recourse Portion"), including any principal amount in excess of the Recourse Portion under this Note. The holders of this Note's recourse with respect to the Non-Recourse Portion shall be limited only to the Pledged Collateral … and the Company shall no further recourse against [Pierce] … with respect to the Non-Recourse Portion." Pierce Aff. at ¶¶ 7 and 8.[3]

The plain language of the Notes expressly provides that Better has NO recourse against Pierce for $1,115,730 (49%) of the $2,277,000 it is seeking to recover from her. The only recourse Better has for this amount is limited to the Pledged Collateral (*i.e.* the stock Pierce acquired with the loan) which Better, not Pierce, holds.

---

[3] The District Court – we submit erroneously – has ignored the "no recourse" language and entered an Order for the full amount of the Notes against Pierce personally with interest. The proposed Judgment seeks the full amount and interest on the same as against Pierce personally in apparent disregard of the explicit "no recourse" language in the Notes.

On March 30, 2022 – nearby two months before the Notes' Due Date – Better sent an e-mail to Pierce claiming that the "balance on [her] loan (principal + interest) ha[d] came due." Pierce Aff. ¶ 10. The March 30, 2022 e-mail also contained a two-part offer: (1) with respect to the unvested shares, Better offered to repurchase those "… via cancellation of that portion of the loan balance"; and (2) with respect to the vested shares, Better offered to "… repurchase those which are vested in order to settle the [entire remaining balance of the] loan." Pierce Aff. at ¶ 10. Better has indicated, in writing, that this offer (to repurchase all of a former employee's shares (vested and unvested) to extinguish the entirety of that former employee's loan balances) was made to all former employees, like Pierce, who signed a Partial Recourse Promissory Note. Pierce Aff. at ¶¶ 11, 12, and 13. Better has not called the loan of any other former employee, despite their having signed precisely the same Partial Recourse Note that Pierce signed. Pierce Aff ¶ 14.

On or about June 8, 2022 Pierce commenced a whistleblower retaliation claim before the Occupational Safety and Health Administration ("OSHA"), alleging that Better retaliated against her for engaging in protected activity in violation of the Sarbanes Oxley Act ("Sox"). Pierce Aff. at ¶ 18 ft.n. 2 and Exhibit E thereto. On or about the same date, Pierce commenced an action before this court – Case No. 22-cv-4748 (AT) (the "Federal Action") – alleging, among other things, that the February 4, 2022 termination of her employment constituted illegal retaliation in violation of § 740 of the New York State Labor Law. Pierce Aff. at ¶¶ 1 and 18 and Exhibit D thereto.[4]

From March 30, 2022 until July 29, 2022 neither Pierce nor her attorneys heard anything from Better regarding the Partial Recourse Promissory Notes. By letter dated July 29, 2022 from

---

[4] Pursuant to a Stipulation and Order, on December 8, 2022 Pierce filed a Consolidated Amended Complaint in the Federal Action. This amended complaint (ECF Dkt. 50 in Case No. 22-cv-04748 (AT)), *inter alia*, added the OSHA proceeding SOX claim and alleged that Better's filing of its flawed Motion for Summary Judgment in Lieu of Complaint constitutes another instance of unlawful retaliation by Better against Pierce. Pierce Aff. at ¶ 31 and Plaintiff's Counterstatement of Undisputed Facts at ¶ 25.

one of Better's attorneys, Better formally demanded repayment from Pierce of the entire principal amounts of the two Partial Recourse Promissory Notes ($2,277,000), even the Non-Recourse Portion. Pierce Aff. at ¶ 19 and Exhibit F thereto.

In response to Better's July 29, 2022 demand letter, Pierce immediately, through her attorney, accepted Better's March 30, 2022 offer to repurchase all of her shares (vested and unvested) to extinguish the entirety of her loan balances (both the Recourse and Non-Recourse Portions) Pierce Aff. at ¶ 17. Pierce repeated her acceptance of Better's March 30, 2022 offer, at least, four (4) more times in August, September, and October 2022. Pierce Aff. at ¶ 17. The District Court, in its Decision and Order, determined that Better's March 30, 2022 did not constitute a binding offer that could have been accepted by Pierce to form a binding agreement. (While Pierce acknowledges the Court's determination on this point, she does not waive any rights concerning the same, including, but not limited to, her right to appeal).

Better's attorney who signed the July 29, 2022 demand letter admitted that he was completely unaware of Better's March 30, 2022 e-mail offer and he acknowledged the existence of the Non-Recourse Portion of the loan balance ($1,115,720). Pierce Aff. at ¶ 20. Commencing on or about September 12, 2022, there was negotiation of a Stock Repurchase and Cancellation of Indebtedness Agreement (the "Cancellation Agreement") that provided for the relief – cancellation of only the Non-Recourse Portion of the Notes – already provided for in the Partial Recourse Notes. Pierce Aff. at ¶ 22. However, in its proposed Cancellation Agreement, Better included a full release, pursuant to which Pierce was asked to release all of her claims, including the claims that she had asserted, and that were still pending, in the OSHA proceeding and the Federal Action. Pierce Aff. at ¶ 22, 23, and 24. Pierce continued, until Better filed its Motion for Summary Judgment in Lieu of Complaint in State Court on October 11, 2022, to request that Better honor

the terms presented in its March 30, 2022 communication, as it had for all former employees who signed Partial recourse Notes, with the purchase of all of her shares (vested and unvested) and the cancellation of the entirety of her loan balances. Pierce Aff. at ¶ 25. In fact, Pierce has consistently indicated that she was willing to sign the revised Cancellation Agreement. Pierce Aff. at ¶ 26 and Exhibit G. Had Better accepted Pierce's offer and/or met the terms of its March 30, 2022 communication, none of the requested fees would have been incurred. Better continues to hold all of the shares connected with the Notes at issue as Pledged Collateral pursuant to the January 25, 2021 agreements. Pierce Aff. at ¶ 22 ft. n. 3 and Exhibits A and B.

Minutes after Pierce offered, subject to Better's providing her with a corrected W-2 for 2021, to "forward" Better a "copy of the signed" Cancellation Agreement (Pierce Aff. at ¶ 26 and Exhibit G), Better filed its Motion for Summary Judgment in Lieu of Complaint (the "Motion for SJ in Lieu") in New York Supreme Court. The Motion for SJ in Lieu was served on Pierce on October 25, 2022 (Pierce Aff. at ¶ 28). On November 9, 2022 Pierce removed the Motion for Summary Judgment in Lieu of Complaint to this Court on the basis of diversity jurisdiction. Pierce Aff at ¶ 32. Better filed its Federal Summary Judgment Motion on or about November 30, 2022. Pierce filed her opposition papers on or about December 29, 2002. Better filed its reply papers on or about January 15, 2023. The Court issued its Decision and Order on or about September 29, 2023.[5]

---

[5] Again, while recognizing the Decision and Order for the purposes of this motion, Pierce does not waive any rights or arguments with regard to the same, including, but not limited to, those raised in her opposition papers or those raised in her opposition to the proposed judgment which clearly reflect that the judgment in question should include neither any portion of the non-recourse elements of the Notes (49%), nor any interest allegedly incurred concerning the same; and should have been further reduced by the amounts due to Pierce as a result of the buybacks set forth in the Notes themselves, and the consequent additional reductions of interest. (See DKT 29 and the opposition is attached as Exhibit "D" to the Leonard Declaration for the Court's convenience).

Argument

General Standards Concerning Requests For Attorneys' Fees

Although the general rule is that attorneys' fees are not recoverable in contract cases, if a contract provides for reasonable attorneys' fees – as the Notes do herein – the courts is then charged with calculating a "presumptively reasonable fee" within its discretion.  See *e.g., Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2nd Cir. 2007); *Tabatznik v. Turner*, 14 Civ. 8135 (JFK), 2016 WL 1267792 (SDNY, March 30, 2016).  The Lodestar analysis submits that by multiplying a reasonable hourly rate in the community by the reasonable number of hours required by the case, a reasonable fee is calculated.  See *e.g., Millea v. Metro-N. R.R. Co.,* 658 F.3d 154, 166 (2nd Cir. 2011).  In determining reasonable rates, Courts should use their discretion to consider the complexity of legal issues, the experience of the attorneys, as well as their "own knowledge of comparable rates charged by lawyers in the district." *Morris v. Eversley*, 343 F.Supp.2d 234, 245 (SDNY, 2004); see also, *Global Brand Holdings, LLC v. Accessories Direct International USA, Inc.,* 17 Civ. 7137 (LAK) 2020 WL 9762874 (SDNY, May 29, 2020); *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2nd Cir. 1985) (Court "may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties" to determine legal fees).

In *Tabatznik*, 2016 WL 1267792 at *11-12, the Court in recognition that the promissory note case was more complex than normal given the multiple transactions and multi-jurisdictional issues (not existent here) reduced partner rates from $825 to $650 per hour and associates rates from $560 to $425 per hour for associates while acknowledging the Ivy league pedigrees, clerkships, and experience of the attorneys. The Court also limited paralegal billing to $200 per hour. In *Rubenstein v. Advanced Equities*, 13 Civ. 1078 (PGG), 2015 WL 585561 at *6-7 (SDNY, February 10, 2015) in conjunction with a motion to confirm an arbitration award, the Court granted Herrick Feinstein a partner rate of $525 (for attorneys with 20-30 years of experience) and an associate rate of $350 for average attorney rate of $368, and, in rejecting an application for a rate of $275 per hour for paralegals reduced the same to $140. In *Nautilus Neurosciences, Inc. v. Fares*, 13 Civ. 1078 (SAS), 2014 WL 1492481, at *3 (SDNY, April 16, 2014), another promissory note matter, the Court accepted an application by counsel from Kelley Drye and Warren including a partner rate of $603 and an associate rate of $337.50. In *Global Brand Holdings, LLC*, 2020 WL 9762874 at *7-8 in connection with a license agreement dispute the Court accepted partner rates of $525 (for an attorney with 20 years of experience) and $375 and $450 (for an attorney with 12 years of experience), but reduced associate rates from $375 (6 years relevant experience), $350 (6 years relevant experience), and $385 (8 years of experience) to $300 per hour. The Court also collected and referenced various other recent Southern District cases concerning breach of contract actions in which attorney rates were routinely assessed at less, often significantly less, than $500

8

per hour. See *e.g., Euro Pacific Capital, Inc. v. Bohai Pharm Grp. Inc.,* 15 Civ. 4410 (VM), 2018 WL 1229842, at *8 (SDNY, March 9, 2018) ($375 for partner rate reasonable); *Carlton Group, Ltd. v. Par-La-Ville Hotels & Residences Ltd.,* 14 Civ. 10139 (ALC), 2016 WL 3659922, at *3 (SDNY, June 30, 2016) (collecting cases finding $450 per hour to be a reasonable rate for experienced partners and senior attorneys practicing in this district); *615 Bldg. Co., LLC v. Rudnick,* 13 Civ. 215 (GBD)(RLE), 2015 WL 4605655, at *3 (SDNY, July 31, 2015) (finding partner rates of $316 to $475 per hour as in the "mid-range" of acceptable billing rates in this district). In *Townsend v. Merrill Lynch Pierce Fenner & Smith,* 18 Civ. 5939 (AJN), 2020 WL 2079633 at *2-3 (SDNY April 30, 2020) in connection with an action to vacate an arbitration award the Court allowed partner rates of $294 (22 years of experience) and $273 (12 years of experience finding that same fell within the range of $250-$450 per hour for such experienced attorneys in this district for civil cases; and associate rates of $227 (6 years of experience); *Dye v. Kopiec,* 16 Civ. 2952 (LGS), 2019 WL 2527218 at *11-12 (SDNY, June 19, 2019) (Court reduced attorney demand by 50% finding 218 hours of attorney time by 10 different attorneys at Moses & Singer (counsel here used 7 attorneys) on promissory note case excessive).

Clearly the rates charged by Kaplan Hecker & Fink LLP were excessive – especially for the type of litigation involved, a straightforward motion for summary judgment on two Notes that constituted a "simple transaction," in Plaintiff's own words.

9

In considered the propriety of the hours expended the Court should consider the tasks performed, the time spent on each task, and the need for the specific attorney to have completed such task, in analyzing "the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2nd Cir. 1997); see also, *LCS Grp. LLC v. Shire LLC*, 383 F. Supp. 3d 274, 280 (SDNY, 2019) (In determining the reasonable number of hours worked, the Court should balance "between principles of thoroughness and efficiency.")  In this case, it is clear that a majority of the hours were involved in bad faith negotiations (Better repeatedly reneged on agreements and failed to consider *bona fide* offers of resolution – especially when the non-recourse portions of the Notes are considered); tasks that we not directly related or necessary to the actual motion papers filed; or which constituted extreme overkill especially given the similarity between the State and Federal papers, the limited filings made, and the caliber (over-qualifications) of the attorneys performing the relevant tasks. Courts have rejected applications for attorneys' fees in the amount of $8,000 for enforcement of promissory note actions. See *e.g., Cutter Bayview Cleaners, Inc., v. Spotless Shirts, Inc.*, 57 A.D.3d 708 (2nd Dept 2008).  There can be no question that 219 hours, including 107 hours of senior partner time, is excessive for the filing of a motion for summary judgment on two Better proclaimed "straightforward" promissory Notes.

<u>Application To The Instant Rates And Hours Requested</u>

The rates charged by each of the partners, Roberta Kaplan ($1,445.00 per hour), Tim Martin ($1,190.00 per hour), and Kate Doniger ($1,020.00 per hour) are all wildly in excess of the relevant standards in this district for straight-forward contract disputes, including enforcement of promissory note obligations.  Similarly, the associate rates of Anne Yearwood ($807.50 with 6 years of relevant experience), Mark Weiner ($807.50 with 8 years of relevant experience), Kelsey Fraser ($743.75 for a 2020 law school graduate with limited litigation experience but with clerkships), and James Blum ($595 for another 2020 law school graduate) are also well in excess of reasonable norms in this district – especially for breach of contract actions.  Even complex promissory note motions involving national firms with world-wide reputations have warranted allowance of partner rates of $603 per hour and associate rates of $337 per hour. See *Nautilus Neurosciences*, 2014 WL 1492481 at *3. Similar firms on breach of contract cases were allowed $525 (for attorneys with 20-30 years of experience) and an associate rate of $350 for average attorney rate of $368, along with a paralegal rate of $140.  See *Rubenstein*, 2015 WL 585561 at *6-7 (SDNY 2015).  In the normal course, standard rates of $250-$475 for partners and $200-$400 for associates for civil matters, including breach of contract actions have been found to be "reasonable" in this district. See *e.g., Townsend*, 2020 WL 2079633 at *2-3; *615 Bldg. Co.*, 2015 WL 4605655 at *3; *Euro Pacific Capital, Inc.,* 2018 WL 1229842, at *8; *Carlton Group, Ltd.,* 2016 WL 3659922, at *3.  In addition the paralegal rates of $276 to $403 are well in excess of

11

anything permitted as reasonable in this district wherein most cases addressing the subject consider

$140 reasonable – with one case allowing $200 and hour.

As referenced above, much of the time billed allegedly directly attributable to the motion

for summary judgment was duplicative, unnecessary, or otherwise unreasonable.

The first mention of any motion for summary judgment in connection with this matter in

Mr. Martin's time records appears on 8/18/22.  Between 8/18/22 and 10/12/22, Mr. Martin reports

devoting some 17 hours to the State Motion for Summary Judgment in Lieu of Complaint along

with some portion of his time on three separate days (9/6, 10/11, and 10/12), as well as 3.4 hours

concerning service issues (Ms. Yearwood spent 8.6 hours (10/24/22 -10/25/22) researching and

drafting a "client memo" concerning service of process for Better's motion – hardly a "reasonably"

chargeable service at $807.50 per hour) – all of which appears facially excessive.  Prior to 8/18/22

and up to removal of the action by Pierce, Mr. Martin billed for various additional services,

including consulting with his client, negotiation with Pierce's counsel which was apparently in

bad faith and cannot be assessed against Pierce as Better made at least two offers that were

accepted but then pulled by Better; opposing a request to consolidate (2.6 hours 11/12-11/14/22);

creating a repurchase/cancellation of indebtedness agreement that required Pierce to withdraw her

whistleblower and other claims and which was ultimately pulled by Better (9.8 hours 9/6 –

9/26/22).  As noted above, upon Pierce's removal of this matter to Federal Court based on clear

law and admitted diversity herein, Better's counsel spent excessive time on this topic. (Ms. Doniger .9 hours on review (11/9/22); Ms. Yearwood 4.6 hours researching removal and timing of filings – which are set forth by statute (11/9/22 – 11/15/22); Mr. Martin some portion of 2.5 hours (11/9/22 – 11/10/22); and Mr. Weiner 2.3 hours researching removal issue (11/9/22 – 11/10/220)).  Mr. Martin then billed another 11.4 hours to nominally revise the State Court filings (11/27/22 – 11/30/22).  Finally, Martin billed 19.9 hours for work on Better's Reply Memorandum (12/29/22 – 1/15/23) while five other attorneys were also billing for work on the same papers.  Ms. Kaplan spent 4.3 hours on the Reply papers. (1/11/23 – 1/12/23). Ms. Doniger contributed 1.3 hours.  Ms. Yearwood billed 46.1 hours on the reply papers alone (12/31/22 – 1/13/23). Mr. Fraser billed 16.5 hours on the reply papers (1/5/23 – 1/13/23). Finally, Mr. Blum also billed 1.2 hours on the same papers. Moreover, the paralegals also billed time for the finalizing and filing of the same papers.

Then there are the seemingly patently erroneous charges which include, but are not limited, a charge for .3 hours by Ms. Kaplan for "Emails re: Commercial Division" on 11/25 well after this matter had already been removed to federal court; and an apparent double billing of Mr. Martin's time on 11/27/22 in the amount of $2,618.00.

As to the paralegal time, and even accepting all of the listed hours as warranted, the total billing was $5,757.43 for 18.6 hours per the documentation filed by Better with this Court.  At a

reasonable rate of $140 and hours, those hours would warrant a payment of no more than $2,604 (even at the outlier rate of $200 per hour, the billing total would have been $3,720.00).

At a minimum, then, this Court should reduce the partner time billed to $600 per hour and the associate time to $300 per hour, both of which are at the top of or above the reasonable range for attorneys' fees in this jurisdiction. This would reduce the total attorney billings from $213,355.28 (the total billings of $219,112.71 – the paralegal billings of $5,757.43) to $97,800.00 (107 x 600 + 112 x 300). In addition, as it appears that at least 47.3 of Mr. Martin's hours were not on work reasonably necessary to the collection on the Notes; 2.2 hours were doubled billed; .3 hours of Ms. Kaplan's time were erroneous; and a minimum of 15.5 of associate time were spent on non-reasonable, only tangentially reacted, tasks, the $97,800.00 amount should be further reduced by $34,530 (49.7 x 600 + 15.5 x 300) for a total of $63,270: a figure which does not even account for the fact that Plaintiff's counsel often had multiple attorneys (up to five) working on the same papers. As set forth above, the paralegal time should also be reduced to $2,604.

## Conclusion

WHEREFORE, for the all of the reasons set forth herein, it is respectfully requested that the Court reduce the amount of fees sought by Plaintiff for attorneys' fees both to a reasonable fee and to reasonable number of hours leaving a maximum billing amount of $65,874.00; and award to Defendant such other and further relief as it deems just and proper.

14

Dated: New York, New York
          December 8, 2023

The Law Offices of Neal Brickman, P.C.
Attorneys for Sarah Pierce
Neal Brickman (NB0874)
Ethan Leonard (EL2497)
420 Lexington Avenue – Suite 2811
New York, New York 10170
(212) 986-6840
neal@brickmanlaw.com